**PROCTOR v. MILLER et al.   (No. 8523.)**

(Court of Civil Appeals of Texas. Galveston. June 6, 1924. Rehearing Denied May 12, 1925.)

**1. Boundaries 33 — Burden on plaintiff to show land sued for was embraced within boundaries of claimed survey.**

Burden is on plaintiff to show land sued for was embraced within boundaries of claimed survey.

**2. Boundaries 37(1)—Evidence held to support verdict that land claimed was not part of survey as alleged.**

Evidence *held* to support verdict that land claimed was not part of survey as alleged.

On Motion for Rehearing.

**3. Appeal and error 719(6)—Court of Civil Appeals not authorized to reverse judgment as being against weight and preponderance of evidence, in absence of assignment attacking judgment on such ground.**

Court of Civil Appeals is not authorized to reverse judgment as being against weight and preponderance of evidence, in absence of assignment attacking judgment on such ground.

**4. Appeal and error 930(1) — On appeal, greatest possible weight is given every fact supporting verdict and judgment.**

On appeal, greatest possble weight is given every fact supporting verdict and judgment.

**5. Appeal and error 994(2), 1003 — Jury trying question of fact are exclusive judges of credibility of witnesses and weight of their testimony.**

Jury trying question of fact are exclusive judges of credibility of witnesses and weight of their testimony.

Error from District Court, Brazoria County; W. S. Sproles, Special Judge.

Suit by J. W. Proctor against G. D. Miller and others. Judgment for defendants and plaintiff brings error. Affirmed.

Gaines & Gaines, of Angleton, and Stevens & Stevens, of Houston, for plaintiff in error.

Rucks & Enlow, of Angleton, for defendants in error.

LANE, J. This suit was instituted by plaintiff in error, J. W. Proctor, against G. D. Miller, Mrs. Loudie J. Douthit, and others who are not involved in the matters presented by this appeal.

The plaintiff's petition is in the usual form of petitions in suits of trespass to try title, and the prayer is for the recovery of 167 acres of land alleged to be a part of the John Brown survey in Brazoria county, Tex. The plaintiff asserts title to said land under a chain of title from the sovereignty of the soil, and by the statutes of limitation of three, five, and ten years.

The John Brown and contiguous surveys, hereinafter referred to, are shown on the above map or sketch practically as it appears in certain maps introduced by plaintiff in error. The land in controversy is shown by the dotted lines in the map and is described in the plaintiff's petition as follows:

"All that certain tract or parcel of land situated in Brazoria county, state of Texas, being in the John Brown survey, abstract No. 153, in said Brazoria county, Tex. Being a tract of land containing 167.2 acres out of the John Brown survey, described by metes and bounds as follows: Beginning at the northwest corner of the said John Brown survey, which is also a corner of the J. M. Musquez survey, on the east line of the T. W. Grayson 273 varas south of the northeast corner of said Grayson survey; thence south with east line of the T. W. Grayson survey 828 varas to a point for corner on said east line; thence east 1,140 varas to a point for southeast corner of this tract; thence north 828 varas to an interior corner of the John Brown survey, which is also the southeast corner of the first tract herein described; thence west with the north line of the John Brown survey; and the south line of Musquez survey 1,140 varas to the place of beginning, containing 167.2 acres of land more or less."

The defendants answered by pleas of not guilty.

The cause was tried before a jury. The court refused to submit the issue of limitation pleaded by the plaintiff and submitted to the jury but two questions, to wit:

(1) "Is the land described in plaintiff's petition, or any part thereof, on the John Brown survey?"

(2) "Is the land described in the plaintiff's petition, or any part thereof, on the J. M. Musquez survey?"

The jury answered the first question, "No," and the second, "Yes," and upon the verdict of the jury the court rendered judgment that the plaintiff take nothing by his suit. From such judgment J. W. Proctor has appealed.

We shall first dispose of the contention of plaintiff in error that the court erred in refusing to submit the issue of limitation to the jury.

After a careful examination of the facts as disclosed by the statement of facts, we find no evidence which raises the issue of limitation. We are therefore of opinion that the court did not err in refusing to submit such supposed issue.

We are now brought to a consideration of the one remaining question, to wit: Is the evidence such as would require at the hands of the trial court, or of this court, a finding as a matter of law that the land in controversy is a part of the John Brown survey, as contended by plaintiff in error?

The John Brown survey was located by Chas. Schoolfield on the 5th day of April, 1838, and its location field notes are as follows:

"Beginning at the northwest corner of one-third of a league of land surveyed in the name of W. T. Brannum. Then south 4,811 varas to a stake and mound, the northeast corner of a league of land surveyed for Edwin Waller, Ass. of John Williams. Then west and part his north boundary line 4,655 varas to a stake and mound, and southeast corner of one-third of a league of land surveyed for Thomas W. Grayson. Then north 2,613 varas to a stake and mound. Then east 1,140 to a stake and mound. Then north 5,096 varas to a stake and mound on the bank of the bayou. Then with the meanderings of the bayou to the place of beginning. Containing in the described boundary one league of pasture land."

The W. T. Brannum was located by Chas. Schoolfield April 1, 1838, with field notes as follows:

"Beginning on the south bank of Bastrop bayou at a stake and mound the northwest corner of a survey of one-third league made for John C. Williams, Assee. Then south 4,217 varas to the southwest corner of said third. Then west with the south line of said third 1,623 varas to a stake and mound. Then north 6,652 varas to a stake and mound on the bank of the bayou. Then with the meanderings of the bayou to the place of beginning. Containing

in the above-described boundary one-third of a league of land, all of which is pasture land."

The Edwin Waller was located by Chas. Schoolfield on March 30, 1838, with field notes as follows:

"Beginning at the place where the east boundary line of Stephen F. Austin's half league crosses the creek, 1,610 varas north of said Austin's southeast corner of said half league. Then north 1,390 varas to a mound the N. E. corner of said half league. Then east 730 varas to a stake and mound Groces S. E. corner. Then north with Groces east boundary line 5,000 varas to a stake and mound Groces corners. Then east 3,516 varas to a stake and mound. Then south 5,050 varas to a stake and mound. Then N. E. corner of Branch T. Archer's league. Then south 52 degrees west with his line, 3,381 varas to a live oak tree, on the east bank of Oyster creek. Then with the meanderings of the creek to the place of beginning. Containing within the above-described survey one league of land three labors of which are arable land, the ballance pasture land."

The T. W. Grayson was located by Chas. Schoolfield March 21, 1838, with field notes as follows:

"Beginning at the southeast corner of S. F. Austin's quarter league, a stake and mound, thence north 2,886.75 varas to a stake and mound, thence east 2,886.75 varas to a stake and mound, thence south 2,886.75 varas to a stake and mound, thence west 2,886.75 varas to a stake and mound at the beginning, containing within the above-described boundary one-third of a league of land—two labors of arable land and the balance pasture land."

The J. M. Musquez survey was originally located by Hennell Stevens in March, 1874, with field notes as follows:

"Beginning at a stake on the south bank of Bastrop bayou, being the N. W. corner of the John Brown league. Thence south 5,441 vrs. with Brown's west line to his corner. Thence west with his north line 1,140 vrs. to his corner on the east line of the Grayson survey. Thence north with said line 273 vrs. to the N. E. corner of the Grayson survey. Thence west with the north line of the Grayson tract 2,841¼ vrs. to a stake. Thence north 4,075 vrs. to a stake on Bastrop bayou. Thence down the bayou with its meanders—to the place of beginning, containing 18,126,243 sqr. vrs., being the balance of the above certificate, all pasture land."

In 1898 a resurvey of the J. M. Musquez was made by Surveyor J. A. Donaldson. In this survey the field notes thereof were made as follows:

"Beginning at a pine post on the south bank of Bastrop bayou at the N. W. corner of the John Brown league from which the mouth of the upper of two small creeks on the north side of said bayou bears N. 23 deg. west; thence south along the west line of the said Brown league 5,441 varas to corner; thence W. 1,140 vrs. to stake in the east line of the T. W. Grayson survey; thence N. 1,101 vrs. to N. E. corner Grayson; thence W. 2,955 vrs. to a

post from which the live oak post at the N. W. corner of the Grayson survey bears W. 167.5 vrs.; thence N. 3,288 vrs. to the south bank of Bastrop bayou, from which a lone oak 4 inches in diameter bears N. 58 deg. 75 min. W. 20 vrs. and a stump of an old leaning live oak bears N. 45 deg. W. 15 vrs.; thence down the bayou with its meanders (meanders all given) to the place of beginning."

Upon receipt of said corrected field notes, the state of Texas issued to Moses Taylor, assignee of J. M. Musquez, a corrected patent of said Musquez survey so as to conform to said corrected field notes.

There was no evidence showing that there was in existence any ,of the artificial objects called for as the corners of any of the above-mentioned surveys; but, to the contrary, the evidence shows that they could not be found. Nor was there any evidence showing any marked line established by Surveyor Schoolfield in making such surveys. None of the objects called for as establishing said corners can now be found and identified, nor is there any evidence us to where such corners and lines were placed by the locating surveyor.

Plaintiff in error, however, contended that the corners and lines of the Edwin ,Waller and T. W. Grayson surveys, called for in the field notes, by which the Brown survey was located, were shown by the maps in general use in the Land Office and by witnesses who testified that they had lived in the section of the country where these surveys were located for 40 years or more, and that while they did not know as a fact where said corners and lines were located by the locating surveyor, they did know that said corners and lines were generally accepted and understood by them to be where plaintiff in error contends they are. Having in this manner fixed the corners and lines called for by the Brown field notes, plaintiff in error, following the survey of the Brown made by E. S. Atkinson in January, 1909, located the Brown survey by beginning at the northwest corner of the W. T. Brannum survey on the south bank of Bastrop bayou, and ran south 3,513 varas to the supposed north line of the Edwin .Waller, disregarding the call for distance as made by the locating surveyor; thence west with said supposed Waller north line 4,655 varas, to the supposed southeast corner of the T. W. Grayson survey; thence north with the supposed east line of the Grayson 2,615 varas for its most northeastern corner; thence east 1,140 varas for its interior corner on its west line; thence north 4,603 varas to Bastrop bayou; and thence down the bayou to place of beginning.

It was shown that the east line of the Brown survey, contended for by plaintiff in error as running from the northwest corner of the Brannum survey to the north line of the Waller, is only 3,513 varas in length, while the field notes made by Chas. Schoolfield in locating the John Brown survey calls to run from the northwest corner of the Brannum, on the south bank of Bastrop bayou, 4,811 varas to the north boundary line of the Edwin Waller survey, which Schoolfield had established only about five days before surveying the Brown. It will also be observed that in making the survey of the Brown, Surveyor Schoolfield calls for the south line of the Brown to run due west with the north line of the Waller to the southeast corner of the T. W. Grayson survey, which he had set only about ten days theretofore. It is thus reasonably made to appear that when Surveyor Schoolfield made the Brown survey on the 5th day of April, 1838, he knew where he had' established the north line of the Waller on the 30th day of March, 1838, only six days theretofore, which he placed, in running the east line of the Brown, due south from the northwest corner of the Brannum on the bayou, 4,811 varas from said bayou. It is evident that if the south line of the Brown is 4,811 varas south of the northwest corner of the Brannum, and that said south line runs due west to the northwest corner of the T. W. Grayson survey, thence north with the east line of the Grayson 2,613 varas, thence east 1,140 varas, thence north to Bastrop bayou, its boundaries would not embrace the land in controversy.

[1, 2] The burden was upon plaintiff in error, plaintiff below, to show that the land he sued for was embraced within the boundaries of the Brown survey, and we are not prepared to hold that he has done so conclusively, or that the evidence· is such as should require at our hands a setting aside of the finding of the jury that it was not a part of the Brown survey.

Since the evidence was not such as to show as a matter of law that the land in controversy was a part of the Brown survey, we are not authorized to interfere with the verdict of the jury that it was not a part of said survey.

For the reasons pointed out, the judgment is affirmed.

Affirmed.

### On Motion for Rehearing.

Appellant has filed his motion for rehearing, and therein complains of the map, which we inserted in our opinion for the purpose of explanation, as not correctly showing the surveys contiguous to the Brown survey, or of those the location of which determines the true location of the south line of the Brown survey. We think the map as it is now in the opinion, same having been slightly changed since the motion for rehearing was filed, is sufficiently correct for the purposes for which we used it, which was to show the surveys the boundary lines of

which were called for by the surveyor in locating the Brown survey.

Complaint is also made of our finding that there was sufficient evidence to support the judgment rendered.

[3-5] The proposition in the motion for rehearing upon which appellant relies for such rehearing is that there was no evidence to support the judgment, or the converse, that the undisputed evidence shows the boundary lines to be where appellant contends they are, and that such being true, the land in controversy is shown to be a part of the Brown survey and the property of appellant. While we may conclude that the weight and preponderance of the evidence is so against the judgment as to show that such judgment is clearly wrong, we are not authorized to reverse the judgment on that ground in the absence of an assignment attacking it on such ground. The greatest possible weight is given on appeal to every fact supporting the verdict and judgment, the court or jury trying the same being the exclusive judges of the credibility of witnesses and the weight of testimony.

Believing that there was evidence to support the judgment as pointed out in our original opinion, the motion for rehearing is overruled.